# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
# SOUTHERN DIVISION

**JORDAAN JAIRRION TILLMAN  # 209116**

                                  **PLAINTIFF**

**VS.**                     **CIVIL ACTION: 1:18cv250-RHW**

**DAVID DUNKIN-HOBBS,** *et al.*                   **DEFENDANTS**

## MEMORANDUM OPINION AND ORDER

  Before the Court are [28] a March 29, 2019 motion for summary judgment and [32] a July 22, 2019 motion to dismiss or for summary judgment filed by Defendants in this *pro* se prisoner civil rights lawsuit.  Plaintiff Jordaan Jairrion Tillman filed no response to either of the motions.  All  parties have consented to the exercise of jurisdiction by the United States Magistrate Judge under 28 U.S.C. § 636(c) and FED.R.CIV.P. 73, and the case has been reassigned to the undersigned for all purposes.  [24], [26]

### Facts and Procedural History

  Jordaan[1] Tillman is a Mississippi Department of Corrections (MDOC) inmate serving four sentences totaling 20 years for convictions from Harrison County, MS in 2018 of residential burglary, theft-taking a motor vehicle and possession of a firearm by a convicted felon.[2]  He is presently housed at East Mississippi Correctional Facility (EMCF) in Meridian, and has a tentative release date of May 23, 2037.  According to his complaint, Tillman was incarcerated in the Harrison County Adult Detention Center (HCADC) on a parole/probation violation when he filed this lawsuit, in which he alleges that HCADC corrections officers David Dunkin-Hobbs and Lloyd Helveston violated his constitutional rights by failing to protect him from assault by a

---

[1] The MDOC spells Tillman's given name "Jordan."

[2] The MDOC website identifies only three of Tillman's convictions.

fellow inmate. Specifically, Tillman alleges that on May 20, 2018, he was brought to the lockdown section (B/D) at HCADC where Helveston was working. Dunkin-Hobbs took him upstairs to cell #227 which was already occupied by an inmate named Humphreys. Tillman wanted a cell to himself due to his "mood and protection percautions (*sic*)" and Humphreys said he was fine letting the officers know "that we would not work out in the cell together," so that one of them would be moved. The officers moved Humphreys, leaving Tillman in cell #227. After about 20 minutes, Tillman was moved downstairs to cell #124 with two other inmates, Rashad Lee and Billy Hamilton. Tillman did not know Lee or Hamilton and had never had any disagreement with them. Dunkin-Hobbs told Tillman he was not entitled to a single cell. Shortly thereafter, Tillman was called out for an attorney visit.

Tillman alleges that while he was gone, inmates Lee and Hamilton told Helveston that if Tillman returned they were going to "make the officer do paperwork, insinuating a fight."[3] Tillman claims Helveston told him about relaying this information to Officer Brandon Smotherman whose response was, "He'll be fine, inmates threat (*sic*) each other all the time." Tillman had originally named Smotherman as a defendant in this lawsuit but at the January 2019 screening/omnibus hearing, he admitted he did not have a "significant claim against [Smotherman]." [28-2, p. 38] Tillman agreed Smotherman could be dismissed from the case, and the Court did so. See Text Order of 1/30/2019. Tillman also acknowledged that Lee and Hamilton did not say there was going to be a fight, and that Helveston did not take Hamilton's remark seriously because inmates try to get moved all the time, "like for instance when me and Mr. Humphreys got moved." [34, p. 5], [28-2, p. 24, 31-32]

---

[3] Tillman states in document [7] that another inmate later told him Lee and Hamilton had previously attacked other cellmates.

When Tillman came back to the cell after his attorney meeting, Hamilton punched him in the face without warning, fracturing Tillman's jaw. Helveston responded to Tillman's cries for help and moved him back upstairs to cell #227. Medical personnel gave him an icepack, and the next day he was taken to the hospital emergency room where he was x-rayed and told he needed surgery. On May 24, 2018 Tillman had surgery; he states he now has three plates in his mouth and face, that his jaw is still numb on the right side, and because of the plates, his mouth hurts when it rains. [1], [12] Tillman believes the officers may have allowed the attack due to his own prior history of rule violations (for fighting, flooding his cell, disorderly conduct, *etc.*), one of which occurred on May 20, 2018 and is the reason he was put in lockdown.

In support of their motion for summary judgment on failure to exhaust grounds, Defendants present the hearing transcript [28-2], and affidavits from Charlene Stinson, Classification/Booking officer at HCADC [28-3] and Debbie Whittle, the HCADC Grievance Officer. [28-1] Stinson avers that she was the Classification Officer who signed Tillman's Classification Record/Assessment form [28-3, p. 3] (also signed by Tillman) which reflects that Stinson advised Tillman where to find the Inmate Handbook and how to report grievances. Whittle's affidavit includes a copy of the HCADC grievance procedure [28-1, p. 4], and she avers that grievance records contain no grievances filed by Tillman regarding a claim that officers failed to protect him from assault by his cellmate. Tillman's testimony demonstrates his familiarity with the grievance procedure at HCADC – he admitted that during his ten-month stay at HCADC (January 23, 2018-November 13, 2018) he filed at least 16 grievances. [28-2, p. 13-14] However, Tillman states in his complaint, and testified at the screening/omnibus hearing, that he filed no grievance regarding the incident of which he now complains before filing suit [1,

p. 3]; that he did not file a grievance about the incident until July 2018, and then he filed only a Step One grievance.[4]  [28-2, pp. 6-11]

In motion [32], Defendants urge they are entitled to sovereign immunity as to any official capacity claims Tillman may be making against them, and to qualified immunity as to his claim of failure to protect.  Defendants present additional evidence consisting of incident reports for the incident which led to Tillman's being taken to lockdown [34-1], and for the incident involving Hamilton's hitting him [34-3], as well as the affidavit of Lloyd Helveston [34-2]. Helveston's affidavit states inmate Hamilton told him "if Tillman came back [Helveston] would have to do paperwork;" that Dunkin-Hobbs was not present when the comment was made; and that Hamilton said nothing else – he did not threaten bodily harm to Tillman or say he would physically hurt Tillman in any way.  Helveston avers that he did not believe Tillman was in danger of bodily harm from other inmates, and he was not present when Tillman returned to the cell and was struck by Hamilton.

## Summary Judgment Standard

Under FED.R.CIV.P. 56, summary judgment is required "if the movant shows there is no genuine dispute as to any material fact and that the movant is entitled to a judgment as a matter of law."  Material facts are those which affect the outcome of the suit under governing law; a genuine dispute exists when the evidence is such that a reasonable jury could return a verdict for the non-movant.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  On a motion for summary judgment, the Court views the evidence and draws reasonable inferences most favorably to the non-moving party, but the burden of proof is on the party who has the burden of proof at trial.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-323 (1986); *Abarca v. Metropolitan*

---

[4] Although his lawsuit was not filed until July 2018, Tillman signed his complaint June 14, 2018.  [1, p. 4]

*Transit Authority,* 404 F.3d 938, 940 (5th Cir. 2005). Movant must identify those portions of pleadings and discovery on file and any affidavits which he believes demonstrate the absence of a genuine issue of material fact. When the moving party has carried his burden, the non-movant must set forth specific facts showing there is a genuine issue for trial by either submitting opposing evidentiary documents or referring to evidentiary documents already in the record which demonstrate the existence of a genuine issue of material fact. *Celotex*, 477 U.S. at 324-325; *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994); *Reese v. Anderson*, 926 F.2d 494, 498 (5th Cir. 1991); *Howard v. City of Greenwood*, 783 F.2d 1311, 1315 (5th Cir. 1986) (non-movant "must counter factual allegations by the moving party with specific, factual disputes; mere general allegations are not a sufficient response"); *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986) (non-movant "must do more than simply show that there is some metaphysical doubt as to the material facts"). Conclusory allegations, unsubstantiated assertions or the presence of a scintilla of evidence, do not suffice to create a real controversy regarding material facts. *Lujan v. National Wildlife Federation*, 497 U.S. 871, 888-89 (1990); *Hopper v. Frank*, 16 F.3d 92, 97-98 (5th Cir. 1994); *Davis v. Chevron U.S.A., Inc.*, 14 F.3d 1082, 1086 (5th Cir. 1994).

Discussion

<u>Exhaustion of Administrative Remedies</u>:

     The Prison Litigation Reform Act of 1995 (PLRA) requires that a prisoner exhaust administrative remedies before filing a § 1983 action in federal court.

> No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

42 U.S.C. § 1997e(a) (Supp. 2000). Exhaustion is required before an inmate brings an action with respect to prison conditions, regardless of the relief offered through administrative procedures. *Booth v. Churner*, 532 U.S. 731, 739 (2001). The United States Supreme Court has explained that the PLRA's exhaustion requirement is mandatory and applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes. See *Porter v. Nussle*, 534 U.S. 516, 532 (2002); see also *Jones v. Bock*, 549 U.S. 199, 204 (2007) (reaffirming that exhaustion is mandatory; stating it is an affirmative defense). The Fifth Circuit Court of Appeals reiterated these principles in *Gonzales v. Seal*, 702 F.3d 785 (5th Cir. 2012), recognizing that "pre-filing exhaustion of prison grievance processes is mandatory." *Id.* at 788. Proper exhaustion is required and is not accomplished "by filing an untimely or otherwise procedurally defective administrative grievance or appeal." *Woodford v. Ngo*, 548 U.S. 81, 83-84 (2006). An inmate's grievance must be sufficiently specific to afford "officials a fair opportunity to address the problem that will later form the basis of the lawsuit." *Johnson v. Johnson*, 385 F.3d 503, 517 (5th Cir. 2004). "It is not enough to merely initiate the grievance process or to put prison officials on notice of a complaint; the grievance process must be carried through to its conclusion." *Walker v. East Miss. Corr. Facility*, 2013 WL 4833901, *2 (S.D. Miss. Sept. 11, 2013) (citing *Wright v. Hollingsworth*, 260 F.3d 357, 358 (5th Cir. 2001)); *Tompkins v. Holman*, 2013 WL 1305580 (S.D. Miss. Mar. 26, 2013). "The requirement of exhaustion applies regardless of Plaintiff's opinion on the efficacy of the institution's administrative remedy program." *Nealy v. Moore*, 2013 WL 6230107, *3 (S.D. Miss. Nov. 30, 2013) (citing *Alexander v. Tippah Co.*, 351 F.3d 626, 630 (5th Cir. 2003)). Exhaustion "is a threshold issue that courts must address to determine whether litigation is being conducted in the right forum at the right time." *Dillon v. Rogers*, 596 F.3d 260, 272 (5th Cir. 2010).

The HCADC has a three-step administrative review process to address inmates' grievances relating to their incarceration. [28-1, p. 4] The affidavit of Debbie Whittle and Tillman's own complaint and testimony establish that he filed no grievance before signing his complaint to commence this lawsuit; and although he alleges he filed a Step One grievance in July 2018, he does not allege that he completed the administrative process before filing suit. This evidence provides sufficient basis for granting the Defendants summary judgment, and dismissing this lawsuit. Even if that were not the case, the Court would still find summary judgment appropriate.

Defendants are entitled to summary judgment on any official capacity claims because such claims are essentially against the governmental entity which employs the officers rather than the officers themselves. *Moore v. Carroll County, Miss.*, 960 F.Supp. 1084, 1087 n.3 (N.D. Miss. 1997). To state a claim against the governmental entity under § 1983, Tillman was required to show the existence of a policy maker, the existence of an official policy, and a constitutional violation caused by the policy or custom. *Monell v. Dep't of Social Servs.*, 436 U.S. 658, 694 (1978); *Piotrowski v. City of Houston*, 237 F.3d 567, 578 (5th Cir. 2001). Because the Court finds neither allegations nor evidence to support a municipal liability claim, any official capacity claims against Defendants will be dismissed.

Officer Dunkin-Hobbs is entitled to summary judgment because Tillman alleges only that Dunkin-Hobbs escorted him to the cells to which Tillman was assigned in the lockdown section. Such allegations are clearly insufficient to support any finding of liability for failure to protect Tillman from later being hit by Hamilton, particularly when Tillman himself had no reason to anticipate the attack, and Helveston's affidavit establishes that Dunkin-Hobbs was not privy to the remark made by Hamilton.

Failure to protect:

While prison officials are charged with protecting prisoners from known excessive risk, they "are not ... expected to prevent all inmate-on-inmate violence." *Adames v. Perez*, 331 F.3d 508, 512 (5th Cir. 2003). The deliberate indifference standard applies to prisoners' claims of failure to protect. *Grabowski v. Jackson County Public Defenders Office*, 47 F.3d 1386, 1396 (5th Cir. 1995). To state a cognizable claim for failure to protect under 42 U.S.C. § 1983, Tillman had to present facts showing he was "incarcerated under conditions posing a substantial risk of serious harm and that prison officials were deliberately indifferent to his need for protection." *Newton v. Black*, 133 F.3d 301, 308 (5th Cir. 1998); *Jones v. Greninger*, 188 F.3d 322, 326 (5th Cir. 1999). A prison official acts with the requisite deliberate indifference if he is aware of an excessive risk to inmate safety and disregards that risk. *Longoria v. Texas*, 473 F.3d 586, 592-93 (5th Cir. 2006); *see also Neals v. Norwood*, 59 F.3d 530, 533 (5th Cir. 1995) (quoting *Farmer v. Brennan*, 511 U.S. at 837, to act with deliberate indifference, "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference."). Mere negligent failure to protect is not actionable under § 1983, nor is deliberate indifference established by an official's failure to alleviate a significant risk that the official should have perceived but did not. *Thompson v. Upshur County, TX*, 245 F.3d 447, 459 (5th Cir. 2001); *Domino v. Texas Dept. of Criminal Justice*, 239 F.3d 752, 756 (5th Cir. 2001). Deliberate indifference is "an extremely high standard to meet."" *Id*. *See also, Sanders v. Cabana*, 2007 WL 922287 (N.D. Miss. March 26, 2007) (finding official's failure to immediately process a red tag against inmate who subsequently attacked plaintiff insufficient to state a § 1983 claim). By affidavit, Helveston has established that Hamilton told him if Tillman came back he (Helveston) would have to do

paperwork; Hamilton said nothing more and did not threaten to hurt Tillman. Helveston did not believe Tillman was in any danger of bodily harm. Even Tillman acknowledged nothing was said about any impending fight, and that Helveston did not take Hamilton's remark seriously because inmates are always trying to get moved, just as he had done earlier with Humphreys. As previously stated, deliberate indifference is not established by an official's failure to alleviate a significant risk that the official should have perceived but did not. Based on the evidence, the Court finds Tillman has failed to show that either Dunkin-Hobbs or Helveston was aware of, and deliberately disregarded, any significant risk to his safety.

Qualified Immunity:

A person acting under color of state law who deprives another of federally protected rights is subject to liability 42 U.S.C. § 1983, but the statute does not create a cause of action; it simply affords a remedy to those who, as a result of state action, are deprived of rights, privileges, or immunities secured by the Constitution and the laws of the United States. *White v. Thomas*, 660 F.2d 680, 683 (5th Cir. 1981). "Section 1983 is not a federally created tort statute." *Coughhorn v. Jackson County*, 2006 WL 3197855 (S.D. Miss. Nov. 2, 2006). "The doctrine of qualified immunity protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Pearson v. Callahan*, 555 U.S. 223, 231 (2009). "When properly applied, [qualified immunity] protects 'all but the plainly incompetent or those who knowingly violate the law.'" *Ashcroft v. al-Kidd*, 563 U.S. 731, 131 S. Ct. 2074, 2074 (2011) (quoting *Malley v. Briggs*, 475 U.S. 335, 341 (1986)).

In resolving a qualified immunity claim, the Court must decide whether the facts alleged show the officer's conduct violated a constitutional right and whether the right was "clearly

established" at the time of its alleged violation; the facts alleged must be sufficient to show that no reasonable officer could have believed Dunkin-Hobbs or Helveston's actions were proper. *Babb v. Dorman*, 33 F.3d 472, 477 (5th Cir. 1994); *Brown v. Callahan*, 623 F.3d 249, 253 (5th Cir. 2010). To be entitled to qualified immunity, Officers Dunkin-Hobbs and Helveston are not required to show they did not violate Tillman's clearly established federal rights. *Pierce v. Smith*, 117 F.3d 866, 872 (5th Cir. 1997). Rather, Tillman has the burden to negate the qualified immunity defense. *Id.*; *Poole v. City of Shreveport*, 691 F.3d 624, 627 (5th Cir. 2012) (holding officials entitled to qualified immunity on summary judgment unless Plaintiff has brought forth evidence showing a genuine issue of material fact that the officer's conduct violated a constitutional right and that the officer's actions were objectively unreasonable in light of clearly established law). The officers' actions are deemed objectively reasonable unless all reasonable officials in their circumstances would have known the conduct at issue violated clearly established law. *Thompson v. Upshur County, Texas*, 245 F.3d 447, 456 (5th Cir. 2001). If reasonably competent officers could disagree on the issue, immunity should be granted. *Mendenhall v. Riser*, 213 F.3d 226, 231 (5th Cir. 2000). Consistent with the Court's finding that Tillman failed to establish the officers were aware of and deliberately disregarded a significant risk to his safety, the Court finds Tillman has not overcome the officers' qualified immunity defense. The Court therefore finds Defendants' summary judgment motions should be granted, and this action dismissed. A separate judgment will be entered.

**SO ORDERED AND ADJUDGED**, this the 17th day of October 2019.

/s/ *Robert H. Walker*
ROBERT H. WALKER
UNITED STATES MAGISTRATE JUDGE